UNITED STATES

v.

**Staff Sergeant Timothy J. STATON,
United States Air Force.**

ACM 37356.

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 21 June 2008.

24 Nov. 2009.

**570**

Appellate Counsel for the Appellant: Major Shannon A. Bennett, Major Michael A. Burnat, and William E. Cassara (civilian counsel).

Appellate Counsel for the United States: Colonel Douglas P. Cordova, Lieutenant Colonel Jeremy S. Weber, Captain Joseph J. Kubler, and Gerald R. Bruce.

Before BRAND, JACKSON, and THOMPSON, Appellate Military Judges.

### OPINION OF THE COURT

JACKSON, Senior Judge:

Contrary to his pleas, a panel of enlisted members sitting as a general court-martial convicted the appellant of eight specifications of assault consummated by a battery upon a child under 16 years of age, in violation of Article 128, UCMJ, 10 U.S.C. § 928. The adjudged and approved sentence consists of a bad-conduct discharge, three years of confinement, and reduction to the grade of E–1. On appeal, the appellant asks this Court to set aside his findings and sentence.

The basis for his request is that he asserts: (1) the military judge erred in instructing the members on the defense of parental discipline when he: (a) included a standard that is not supported by case law, (b) presented incompatible standards regarding the use of permissible force, and (c) permitted the members to draw an impermissible inference that no risk of serious bodily injury is required if bruising, welts, or bleeding is present; (2) the evidence is legally and factually insufficient to support findings of guilty on Specifications 2 and 3 of the Charge and Specifications 1 through 5 of the Additional Charge because the government failed to prove beyond a reasonable doubt that the affirmative defense of parental discipline was inapplicable; (3) the military judge erred in admitting evidence that the appellant may have attempted to kill or injure the former trial counsel, as the evidence was inadmissible under Mil. R. Evid. 404(b) because it was not probative of consciousness of guilt and, even if it was, its probative value was substantially outweighed by the danger of unfair prejudice where the government's theme was that the appellant was an angry, out of control person who tended to "snap;" and (4) the military judge denied the appellant his right to confrontation under the Sixth Amendment [1] when he limited evidence that was directly probative of one witness' credibility and her motive to misrepresent. Finding no prejudicial error, we affirm the findings and sentence.

### Background

The case against the appellant began on 2 August 2007, when he advised CC, a mental health therapist, and LF, the program director of a local social services department, that he struck CJ, his minor stepson, with a belt and smashed CJ's head into a wall. An investigation ensued and physical child abuse charges were preferred against the appellant. At trial, the government's evidence consisted of, inter alia, testimony from: CC; LF; PW, a family advocacy officer assigned to the appellant's base; KS, the appellant's ex-wife; CJ; and Captain (Capt) SG, the former trial counsel assigned to the case.

CC testified the appellant told her that he spanked CJ for disciplinary purposes in response to CJ's misbehavior and, in doing so, left bruises on CJ's buttocks. LF testified

1. U.S. CONST. amend. VI.

the appellant told her he had beaten CJ with a "Weid" weightlifting belt on several occasions, which left black and blue marks on CJ's buttocks. PW testified the appellant told her he spanked CJ with a flyswatter and a belt at least twenty times since he has known CJ, and these spankings left marks on CJ's buttocks. She also testified he admitted he probably had used excessive punishment on five or six of those occasions.

KS testified the appellant always became angry prior to punishing CJ. She also testified she saw bruises on CJ but did not report the appellant because she was afraid child protective services (CPS) would take CJ away from her again.[2] She further testified CPS was corrupt and she had had negative experiences with them in the past. During cross-examination, the trial counsel objected when the trial defense counsel asked KS if CPS took her children away because the house was filthy. After hearing arguments by counsel, the military judge sustained the objection based on lack of relevance.[3]

CJ testified he started living with the appellant when CJ was 6 years old and continued to live with the appellant until CJ was 12 years old. CJ further testified that during the time period they lived together the appellant: punched him in the back of his head; picked him up by the throat and hit his head against a wall; hit him in the back of the knees with a golf club; and spanked him with a leather belt, battle dress uniform belt, wire coat hanger, fly swatter, and weightlifting belt. He also stated the appellant did not always discipline him with spankings; however, spankings occurred most days and they left bruises or red marks on his buttocks.

Capt SG testified the appellant drove his vehicle toward her at a high rate of speed while she was walking across an on-base parking lot. She stated it was her belief that the appellant was attempting to intimidate her, as she was the trial counsel assigned to his case at the time of the incident.[4]

At trial, the defense presented, inter alia, witness testimony and affidavits attesting to the appellant's character for truthfulness and good military character.

## Discussion

### Parental Discipline Instruction

"Military judges have 'substantial discretionary power in deciding on the instructions to give.' " *United States v. McDonald,* 57 M.J. 18, 20 (C.A.A.F.2002) (quoting *United States v. Damatta–Olivera,* 37 M.J. 474, 478 (C.M.A.1993)). "We review the judge's decision to give or not give a specific instruction, as well as the substance of any instructions given, 'to determine if they sufficiently cover the issues in the case and focus on the facts presented by the evidence.' " *Id.* (quoting *United States v. Maxwell,* 45 M.J. 406, 424 (C.A.A.F.1996)). Determining whether a jury was properly instructed is a question of law; therefore, review is de novo. *Id.*

If we find there is a constitutional error, this Court may not affirm the case unless the error was harmless beyond a reasonable doubt. *United States v. Grijalva,* 55 M.J. 223, 228 (C.A.A.F.2001) (citing *Arizona v. Fulminante,* 499 U.S. 279, 295, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)). We review de novo whether a constitutional error is harmless beyond a reasonable doubt. *Id.* "[T]he test for determining whether [a] constitutional error was harmless is whether it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' " *McDonald,* 57 M.J. at 20 (quoting *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). In other words, "[i]s it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?" *Id.* (quoting *Neder v. United States,* 527 U.S. 1, 18, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999)).

2. KS has five children but only two, CJ and an infant, resided with KS and the appellant. Child protective services had taken KS's children away years prior to the incidents that gave rise to the appellant's court-martial.

3. The military judge's ruling on the trial counsel's objection to this line of questioning forms the basis of the appellant's fourth assignment of error.

4. The military judge, over trial defense counsel's objection, allowed this testimony as evidence of consciousness of guilt. This ruling forms the basis of the appellant's third assignment of error.

■ In the case at hand, the military judge conducted an extensive review of the proposed instructions with counsel. During these discussions, the military judge and counsel addressed the parental discipline instruction in considerable detail, including deviations from the pertinent model instruction in Department of the Army Pamphlet (D.A.Pam.) 27–9, *Military Judges' Benchbook*, ¶ 5–16 (1 Jul 2003). Of particular note, the appellant, via his trial defense counsel, asked the military judge to include a definition of the term "serious bodily injury" not found in the parental discipline instruction. Provided the term "serious bodily injury" was defined, the defense had no objection to the military judge advising the members that physical evidence of trauma, loss of blood, or other serious injury is not required before finding any given parental disciplinary action is excessive, or advising the members that bruising, welting, bleeding, or other marks are not necessary if the act created a substantial risk of causing death, serious bodily injury, disfigurement, extreme pain, extreme mental distress, or gross degradation. With respect to the degree of force, the defense conceded "moderate" is the same as "not excessive" and "not moderate" is the same as "excessive." The appellant then asked for a tailored instruction that the term "moderate" means "not excessive."

■ Yet on appeal the appellant complains the military judge erred by deviating from the standard *Military Judges' Benchbook* instruction and, in so doing, permitted the members to draw an impermissible inference that no risk of serious bodily injury is required if bruising, welts, or bleeding is present. We find the appellant's assertions to be without merit. While military judges are encouraged not to significantly deviate from the standard instructions found in the *Military Judges' Benchbook*, the standard instructions are not sacrosanct. *United States v. Rush*, 51 M.J. 605, 609 (Army Ct. Crim.App.1999), *aff'd*, 54 M.J. 313 (C.A.A.F. 2001). In the military justice system, military judges are "required to tailor the instructions to the particular facts and issues in a case." *United States v. Baker*, 57 M.J. 330, 333 (C.A.A.F.2002) (citing *United States v. Jackson*, 6 M.J. 261, 263 n. 5 (C.M.A.1979);

*United States v. Groce*, 3 M.J. 369, 370–71 (C.M.A.1977)). When tailoring instructions to a specific case, they may be obliged to deviate from the standard *Military Judges' Benchbook* instructions. *See United States v. Bigelow*, 57 M.J. 64, 67–68 (C.A.A.F.2002) (citing *United States v. Gillette*, 35 M.J. 468 (C.M.A.1992) (holding the critical principles of the standard accomplice instruction were required and not necessarily the standard *Military Judges' Benchbook* instruction, word for word)); *United States v. Hopkins*, 25 M.J. 671 (A.F.C.M.R.1987) (finding the instruction given was a more accurate description of the effects of a bad-conduct discharge adjudged at a special court-martial than the standard *Military Judges' Benchbook* instruction).

■ Furthermore, a trial defense counsel's failure to object waives any error unless the instructions were so incomplete as to constitute plain error. *United States v. Simpson*, 58 M.J. 368, 378 (C.A.A.F.2003) (citing *United States v. Glover*, 50 M.J. 476, 478 (C.A.A.F.1999)). To prevail under a plain error analysis, the appellant bears the burden of showing: "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *United States v. Scalo*, 60 M.J. 435, 436 (C.A.A.F.2005) (quoting *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F.2000)). Moreover, while the threshold for establishing prejudice is low, the appellant must nevertheless make "some colorable showing of possible prejudice." *Id.* at 436–37 (quoting *Kho*, 54 M.J. at 65).

■ Here, the military judge did not err by defining the term "moderate" as "not excessive" and the term "excessive" as "not moderate." The term "immoderate" is a synonym for the term "excessive" and the definition of "immoderate" means "not moderate." *Random House Thesaurus* (college ed.1984); *Random House College Dictionary* (revised ed.1980). Moreover, this Court has held the exerted force must be reasonable or moderate for the parental discipline defense to apply, and that holding remains binding on Air Force practitioners. *United States v. Arnold*, 40 M.J. 744, 746 (A.F.C.M.R.1994).

Nor did the military judge err in the other deviations from the standard *Military Judges' Benchbook* instruction because his deviations conformed to current case law. *See, e.g., United States v. Rivera*, 54 M.J. 489, 492 (C.A.A.F.2001) (holding the government can meet its burden of establishing a substantial risk of serious bodily injury without physical manifestation of harm).

Based on the aforementioned, we find the military judge did not err. Furthermore, assuming, arguendo, he did, any error was not plain and the appellant has failed to show the requisite prejudice entitling him to relief. On this latter point, there is no evidence that the military judge's instructions allowed the members to make an impermissible inference or, for that matter, evinces of any other harm. The appellant has failed to show plain error, and by failing to object to the instructions he waived any error with the parental discipline instruction.

Lastly, assuming, arguendo, plain error, the appellant is not entitled to relief because any error was caused, at least in part, by his own hand.[5] An appellant cannot create or exacerbate an error and then take advantage of a situation of his own making. "Invited error does not provide a basis for relief." *United States v. Raya*, 45 M.J. 251, 254 (C.A.A.F.1996).

### Legal and Factual Sufficiency

In accordance with Article 66(c), UCMJ, 10 U.S.C. § 866(c), we review issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F.2002). "The test for legal sufficiency of the evidence is 'whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt.'" *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F.2002) (quoting *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987)). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F.2001).

Our assessment of legal sufficiency is limited to evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A.1993).

■ The parental discipline defense permits corporal punishment of a child by a parent if it is "for the purpose of safeguarding or promoting the welfare of the child, including the prevention or punishment of the child's misconduct, and the force used [is not] unreasonable or excessive." D.A. Pam. 27–9, ¶ 5–16; *Rivera*, 54 M.J. at 492. Concerning the second element, the force is excessive or unreasonable if it is "designed to cause or known to create a substantial risk of causing death, serious bodily injury, disfigurement, extreme pain, extreme mental distress, or gross degradation." D.A. Pam. 27–9, ¶ 5–16; *see United States v. Robertson*, 36 M.J. 190, 191 (C.M.A.1992). Once the accused raises the parental discipline defense, the government must refute the defense by proof beyond a reasonable doubt. *Rivera*, 54 M.J. at 490.

■ The evidence supports a finding that the appellant satisfied the first prong of the test, as the appellant was clearly disciplining his stepson. However, given the appellant's status as a military member, a status that accords the appellant the ability to wield an extraordinary potential for force based on fitness level, background, and training; CJ's age at the time of the offenses; and the objects that the appellant used to mete out punishment, we hold the members could have properly concluded the appellant created a substantial risk of serious bodily injury to CJ. *See id.* at 492. The government met its burden of discounting the applicability of the parental discipline defense and the evidence, considered in a light most favorable to the government, legally supports the appellant's conviction on the questioned specifications.

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we ourselves are] convinced of the accused's guilt beyond a reasonable doubt." *Turner*, 25

---

**5.** As previously discussed, the appellant asked for a tailored instruction or concurred in a tailored instruction that deviated from the standard *Mili-* *tary Judges' Benchbook* instruction and, in so doing, had a hand in creating any error with the instruction.

M.J. at 325. Review of the evidence is limited to the entire record, which includes only the evidence admitted at trial and exposed to the crucible of cross-examination. Article 66(c), UCMJ; *United States v. Bethea*, 46 C.M.R. 223, 224–25, 1973 WL 14486 (C.M.A. 1973). We have carefully considered the evidence and are convinced beyond a reasonable doubt that the appellant is guilty of the questioned specifications.

*Admissibility of Uncharged Misconduct*

We review the military judge's decision on whether to admit or exclude evidence that the appellant drove his vehicle at an unsafe speed toward the former trial counsel under an abuse of discretion standard. *United States v. Bare*, 65 M.J. 35, 37 (C.A.A.F.2007). "Mil. R. Evid. 404(b), like its federal rule counterpart, is one of inclusion.... The nub of the matter is whether the evidence is offered for a purpose other than to show an accused's predisposition to commit an offense." *United States v. Tanksley*, 54 M.J. 169, 175 (C.A.A.F.2000), *overruled in part by United States v. Inong*, 58 M.J. 460 (C.A.A.F. 2003) (internal citations omitted).

■ Uncharged misconduct may be admitted for "other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Mil. R. Evid. 404(b). The admissibility of uncharged misconduct is tested using a three-prong analysis:

1. Does the evidence reasonably support a finding by the court members that [the] appellant committed prior crimes, wrongs or acts?
2. What "fact ... of consequence" is made "more" or "less probable" by the existence of this evidence?
3. Is the "probative value ... substantially outweighed by the danger of unfair prejudice"?

*United States v. Reynolds*, 29 M.J. 105, 109 (C.M.A.1989) (internal citations omitted) (alterations in original).

The military judge made essential findings of fact in support of his decision to admit evidence that the appellant drove his vehicle at an unsafe speed toward Capt SG, the former trial counsel. He found, inter alia, while Capt SG was walking to the base gymnasium, the appellant drove toward her at a high rate of speed in an attempt to intimidate her. Further, at the time of the incident, she was the trial counsel assigned to the appellant's case. The findings of fact are not clearly erroneous, and we adopt them as our own. Capt SG's testimony reasonably supports a finding that the appellant attempted to intimidate her.

The military judge's conclusions of law are also correct. Applying the *Reynolds* test, he properly held the evidence was indicative of the appellant's consciousness of guilt. On this point he cited *United States v. Cook*, 48 M.J. 64, 66 (C.A.A.F.1998), noting evidence of intimidation of witnesses or members of the prosecution is evidence which tends to show a consciousness of guilt. Although the *Cook* case specifically addresses intimidation of witnesses, a similar rationale exists for the admissibility of evidence of intimidation of a prosecutor to show consciousness of guilt. *See, e.g., United States v. Copeland*, 321 F.3d 582, 597 (6th Cir.2003) (holding the defendants' threat to harm a United States Attorney prosecuting them was probative of the defendants' consciousness of guilt). Thus, we find the second prong of the *Reynolds* test was met.

The third prong of the *Reynolds* test was also met. The military judge did a Mil. R. Evid. 403 balancing test and found the probative value of the uncharged misconduct was not substantially outweighed by the danger of unfair prejudice. We agree. Moreover, we note the military judge's clear, cogent, and correct limiting instructions on the use of the uncharged misconduct prevented any unfair prejudicial impact. *See Tanksley*, 54 M.J. at 176–77. We therefore hold the military judge did not abuse his discretion in admitting evidence of the appellant's uncharged misconduct.

*Cross–Examination of KS*

The Sixth Amendment guarantees an accused the right "to be confronted with the witnesses against him." U.S. CONST. amend. VI, quoted in *United States v. Carruthers*, 64 M.J. 340, 341 (C.A.A.F.2007). "An important function of this constitutionally protected

right is to provide the defense an opportunity to expose the possible interests, motives, and biases of prosecution witnesses." *Carruthers,* 64 M.J. at 341 (citing *Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); Mil. R. Evid. 608(c)).

However, an accused's confrontation rights are not absolute. Insofar as the Confrontation Clause is concerned, trial judges maintain liberal discretion to impose reasonable limits on cross-examination based on concerns about, inter alia, marginally relevant interrogation. *Id.* (citing *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *United States v. James,* 61 M.J. 132, 134–35 (C.A.A.F.2005); Mil. R. Evid. 403). The military judge may restrict cross-examination when the probative value of the evidence sought would be "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Mil. R. Evid. 403.

We review a military judge's decision to admit or exclude evidence for an abuse of discretion. *United States v. Manns,* 54 M.J. 164, 166 (C.A.A.F.2000) (citing *United States v. Sullivan,* 42 M.J. 360, 363 (C.A.A.F.1995)); *United States v. Rust,* 41 M.J. 472, 478 (C.A.A.F.1995). "[A] military judge abuses his discretion if his findings of fact are clearly erroneous or his conclusions of law are incorrect." *United States v. Ayala,* 43 M.J. 296, 298 (C.A.A.F.1995). When a military judge conducts a proper Mil. R. Evid. 403 balancing test, we will not overturn his ruling unless there is a clear abuse of discretion. *Manns,* 54 M.J. at 166 (citing *United States v. Ruppel,* 49 M.J. 247, 250 (C.A.A.F.1998)).

However, when a military judge fails to conduct a proper Mil. R. Evid. 403 balancing test, we give his ruling no deference and decide the issue de novo. *Id.*

In the case at hand, the military judge did not conduct a Mil. R. Evid. 403 balancing test; thus, we examine this issue de novo. At best, the line of questioning regarding whether KS had a filthy house and whether CPS took her children away because she had a filthy house was marginally relevant. Moreover, the limited probative value of this evidence was substantially outweighed by the danger of confusion of the issues and by considerations of time. Lastly, the military judge permitted sufficient cross-examination to provide the trial defense counsel with an opportunity to expose KS's possible interests, motives, and biases. In short, we hold the military judge did not abuse his discretion in limiting the trial defense counsel's cross-examination of KS.

*Conclusion*

The approved findings and sentence are correct in law and fact and no error prejudicial to the substantial rights of the appellant occurred. Article 66(c), UCMJ; *United States v. Reed,* 54 M.J. 37, 41 (C.A.A.F.2000). Accordingly, the approved findings and sentence are

AFFIRMED.