# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
FLOR, POND, and STEELE
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Corporal RICHARD K. WILCOXSON**
**United States Army, Appellant**

ARMY 20240104

Headquarters, 1st Cavalry Division
Maureen A. Kohn, Military Judge (Arraignment)
Joseph K. Venghaus, Military Judge (Trial)
Colonel Shari F. Shugart, Staff Judge Advocate

For Appellant: Robert Feldmeier, Esquire (on brief, reply brief, and on brief in response to specified issues).

For Appellee: Colonel Richard E. Gorini, JA; Major Elizabeth G. Van Dyck, JA; Lieutenant Colonel Jonathan P. Robell, JA (on brief and on brief in response to specified issues).

12 May 2026

--------------------------------------
MEMORANDUM OPINION
--------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

FLOR, Chief Judge:

A military judge, sitting as a general court-martial, convicted appellant, pursuant to his plea, of one specification of assault consummated by a battery upon a child under sixteen years of age in violation of Article 128, Uniform Code of Military Justice, 10 U.S.C. § 928 [UCMJ]. The military judge also convicted appellant, contrary to his pleas, of one specification of attempting to commit a lewd act upon a child, one specification of assault consummated by a battery upon a child, and two specifications of wrongful possession of child pornography in violation of Articles 80, 128, and 134, UCMJ.

Appellant raises four assignments of error: (1) whether the evidence is legally and factually sufficient; (2) whether the military judge violated the double

jeopardy clause when he re-entered findings and convicted appellant of conduct of which he had previously acquitted him; (3) whether the sentence is illegal because the military judge improperly applied the post-2019 sentencing rules where appellant elected pre-2019 sentencing rules; and (4) whether this court must remand the case for new convening authority action.[1]

We find a sufficient basis in law and fact and therefore affirm.

## BACKGROUND

Appellant lived in Killeen, Texas with his wife. In December 2022, appellant started chatting online with someone whom he believed to be a fifteen-year-old girl, when in reality it was a Criminal Investigation Division (CID) special agent posing as this underage girl. These online chats started on the Whisper application but transitioned to Snapchat. During these chats, appellant asked for nude photographs and said, "if you sent nudes I'd masterbate [sic] to them." This formed the basis for the attempt to commit a lewd act upon a child offense.

The CID special agent received a search authorization for appellant's phone. Examination of the phone revealed images of child pornography and that some of this child pornography was located within the Whisper application. This formed the basis for one of the specifications of possession of child pornography.

In addition to the child pornography, CID located evidence of physical abuse in the phone. Appellant's wife had a brother, aged fifteen at the time of trial, who would stay at appellant's home several times per week. Appellant and his wife would play a parental role towards her brother, which included administering corporal punishment when the brother would misbehave, often at the request of the boy's mother. In the camera roll of the phone seized by CID, the agents discovered a video showing that appellant had used a leather belt embedded with metal shell casings to whip his brother-in-law across the buttocks in October 2018. At trial, appellant's brother-in-law testified about how the extreme pain caused by this assault exceeded that which he had previously experienced from abdominal surgery. He also testified about other incidents of physical assault at the hands of appellant. These assaults formed the basis for the assaults consummated by a battery upon a child.

In January 2023, while the investigation was ongoing, CID was notified of other possible online misconduct committed by appellant. This led CID to obtain a search authorization to seize and search appellant's new phone. Examination of this

---

[1] We have given full and fair consideration to the matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and determine they merit neither discussion nor relief.

phone revealed videos of child pornography that had been downloaded after the seizure of appellant's first phone. This formed the basis for the other specification of possession of child pornography.

The military judge sentenced appellant to a dishonorable discharge, confinement for 36 months, forfeiture of all pay and allowances, and reduction to the grade of E-1.[2]

## LAW AND DISCUSSION

### A. Legal and Factual Sufficiency

Because two of the specifications for which appellant was found guilty of at trial occurred prior to 1 January 2021, we review this case under the previous version of Article 66(d), UCMJ.[3] Under that standard, this court reviews questions of factual sufficiency de novo and may "affirm a conviction only if [we] conclude[], as a matter of factual sufficiency, that the evidence proves appellant's guilty beyond a reasonable doubt." *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). "Such a review involves a fresh, impartial look at the evidence, giving no deference to the decision of the trial court on factual sufficiency beyond the admonition in Article 66(c), UCMJ, to take into account the fact that the trial court saw and heard the witnesses." *Id.*

---

[2] The military judge sentenced appellant to 24 months for the attempt to commit a lewd act upon a child, 12 months for one of the possession of child pornography specifications and 18 months for the other specification, 4 months for one of the assault consummated by a battery upon a child specifications and 12 months for the other specification. The assaults consummated by a battery were to run concurrently with each other. The attempt to commit a lewd act upon a child specification and the possession of child pornography specifications were to run concurrently with each other. These two groupings were to run consecutively with each other. The appellant was credited with 490 days total in confinement credit. 418 days of that credit were for pretrial confinement credit and 72 days of that credit were judicially ordered for Article 13 violations.

[3] Appellant's brief erroneously applies the "new Article 66(d)(1)(B)" standard of review and cites to *United States v. Harvey*, 85 M.J. 127 (C.A.A.F. 2024), to show what standard of review we should apply under that statute. However, "[t]he amendment to Article 66(d)(1)(B) applies only to courts-martial . . . where every finding of guilty in the Entry of Judgment is for an offense that occurred on or after 1 January 2021." *United States v. Scott*, 84 M.J. 583, 584 (Army Ct. Crim. App. 2024).

This court reviews issues of legal sufficiency de novo. *United States v. Robinson*, 77 M.J. 294, 297 (C.A.A.F. 2018) (internal citation and quotation marks omitted). Evidence is legally sufficient if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 297–98. Because we must draw "every reasonable inference from the evidence of record in favor of the prosecution," the standard for legal sufficiency "involves a very low threshold to sustain a conviction." *United States v. Smith*, 83 M.J. 350, 359 (C.A.A.F. 2023) (quoting *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (internal quotation marks omitted); *Robinson*, 77 M.J. at 297–98. Further, this court's assessment for both legal and factual sufficiency "is limited to the evidence presented at trial." *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993) (citations omitted).

Appellant specifically challenges his convictions for possession of child pornography (Specifications 1 and 2 of Charge III) and one of the specifications for assault consummated by a battery upon a child (Specification 3 of Charge IV). While appellant does not raise a factual or legal sufficiency challenge to the remaining specifications, we have performed our factual and legal sufficiency review of the remaining specifications of which appellant was convicted. In conducting our factual sufficiency review, we are convinced, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, of appellant's guilt beyond a reasonable doubt. *United States v. Oliver*, 70 M.J. 64, 68 (C.A.A.F. 2011). In conducting our legal sufficiency review, we are equally convinced based on the evidence presented at trial that "any rational trier of fact" could have found all of the elements of the crime beyond a reasonable doubt. *Robinson*, 77 M.J. at 297–98 (internal citation and quotation marks omitted).

Appellant challenges the factual sufficiency of his child pornography possession convictions on four grounds. He contends that the government failed to prove: (1) that the charged images depicted actual children; (2) that the material violated established contemporary community standards; (3) that the offense caused or was likely to cause actual or potential discredit to the military service; and (4) that he knowingly possessed child pornography. As to the fourth ground, appellant argues that because he maintained an extensive collection of adult pornography on his devices, the government was required—but failed—to produce affirmative evidence that he opened or otherwise interacted with the small number of child pornography files found within that collection.

To convict appellant of possession of child pornography, as charged in this case, the government was required to prove beyond a reasonable doubt: (1) that appellant knowingly and wrongfully possessed child pornography; and (2) that, under the circumstances, the conduct of appellant was of a nature to bring discredit

4

upon the armed forces.[4] *Manual for Courts-Martial, United States* (2019 ed.) [MCM], pt. IV, ¶95.b.1. Possessing means "exercising control of something. Possession may be direct physical custody . . . or it may be constructive . . . . Possession must be knowing and conscious. Possession inherently includes the power or authority to preclude control by others." *MCM*, pt. IV, ¶95.c.8. Child pornography "means material that contains either an obscene visual depiction of a minor engaging in sexually explicit conduct or a visual depiction of an actual minor engaging in sexually explicit conduct." *MCM*, pt. IV, ¶95.c.4. Obscene

> means that the average person applying contemporary community standards would find that the visual images depicting minors engaging in sexually explicit conduct, when taken as a whole, appeal to the prurient interest in sex and portray sexual conduct in a patently offensive way; and that a reasonable person would not find serious literary, artistic, political, or scientific value in the visual images depicting minors engaging in sexually explicit conduct.[5]

Benchbook, para. 3A-62-1.d.

Circumstantial evidence is "evidence which tends directly to prove not a fact in issue but some other fact or circumstance from which, either alone or together with other facts or circumstances, one may reasonably infer the existence or non-existence of a fact in issue." Rule for Courts-Martial [R.C.M.] 918(c) discussion.[6] "Findings may be based on direct or circumstantial evidence." R.C.M. 918(c). "[T]he government is free to meet its burden of proof with circumstantial evidence." *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (viewing child pornography case); *see also United States v. Davis*, 49 M.J. 79 (C.A.A.F. 1998) (finding circumstantial evidence can be sufficient to establish intent for attempted premeditated murder).

In *United States v. Wells*, our superior court held that the element of service discrediting conduct is focused on "whether the accused's conduct would tend to

---

[4] The government only charged service discrediting conduct in this case, not prejudicial to good order and discipline.

[5] Dep't of Army, Pam. 27-9, Legal Services: Military Judges' Benchbook, para. 3a-95-1 (29 Feb. 2020) [Benchbook].

[6] The Benchbook uses a slightly different version: circumstantial evidence is "evidence that tends to prove some other fact from which, either alone or together with some other facts or circumstances, you may reasonably infer the existence or nonexistence of a fact in issue." Benchbook, para. 7-3.

bring discredit on the armed forces if known by the public," and that the government need not prove "anyone was aware of an accused's conduct or to specifically articulate how the conduct is service discrediting." 85 M.J. 154, 157 (C.A.A.F. 2024) (quoting *United States v. Phillips*, 70 M.J. 161, 166 (C.A.A.F. 2011) (internal quotation marks omitted)). Instead, the government "must introduce sufficient evidence of the accused's allegedly service discrediting conduct to support a conviction." *Id.*

First, the offense of child pornography under Article 134, UCMJ, does not require that the material be depictions of actual children. *MCM*, pt. IV, ¶95.c.1. ("The Article 134 offense of child pornography is broader than the federal and state statutes . . . and extends to visual depictions of what appear to be minors."). Second, regardless of whether the charged images and videos were of actual children, there is sufficient evidence to find beyond a reasonable doubt that the "average person applying contemporary community standards" would find the images and videos possessed by appellant to "appeal to the prurient interest in sex and portray sexual conduct in a patently offensive way." In other words, the fact finder could have found that the images and videos possessed by appellant were obscene. Furthermore, in consideration of *Wells*, the government offered sufficient evidence of the service discrediting nature of the conduct. Finally, even if appellant possessed a very large collection of adult pornography, and these images and videos of child pornography were a very small subset of this collection, the government introduced enough evidence, both direct and circumstantial, that appellant knew he possessed child pornography. For instance, after appellant's first phone was seized, appellant bought a new phone and downloaded additional child pornography. We are convinced of the factual and legal sufficiency of appellant's convictions for possession of child pornography beyond a reasonable doubt.

Turning next to assault consummated by a battery upon a child, appellant challenges the factual sufficiency of his conviction of Specification 3 of Charge IV, arguing that the government failed to disprove the parental discipline defense and that the force used was not excessive.

As a threshold matter, appellant pled guilty to Specification 3 of Charge IV. During the providence inquiry, appellant expressly disclaimed the parental discipline defense, acknowledging the pain he inflicted upon the child was extreme. *See* R. 295-298. Based on citations in appellant's brief to trial defense counsel's closing arguments, we construe appellant's challenge of factual sufficiency as directed at Specification 1 of Charge IV—a separate specification alleging assault consummated by a battery upon a child—to which appellant pled not guilty but was found guilty.

In order to convict appellant of assault consummated by a battery upon a child as charged in Specification 1 of Charge IV, the government was required to prove beyond a reasonable doubt: (1) that appellant did bodily harm to a certain person;

(2) that the bodily harm was done with unlawful force or violence; and (3) that the person was then a child under the age of 16 years. *MCM*, 2016, pt. IV, ¶54.b.3.c.

Parental discipline may serve as an affirmative defense to this offense. The law avails the defense when "the actor is the parent or guardian or other person similarly responsible for the general care and supervision of a minor or a person acting at the request of such parent, guarding or other responsible person." *United States v. Robertson*, 36 M.J. 190, 191 (C.M.A. 1992) (citing Model Penal Code § 3.08(1) (A.L.I. 1985)); *see also* Benchbook, para. 5-17. A person entitled to assert this defense does not ordinarily commit a criminal offense by imposing corporal punishment, provided the punishment is administered for the purpose of safeguarding or promoting the child's welfare "including the prevention or punishment of [the minor's] misconduct," and the force used is neither unreasonable nor excessive. *United States v. Brown*, 26 M.J. 148, 150 (C.M.A. 1988) (citing Model Penal Code § 3.08(1) (A.L.I. 1985)). Force is unreasonable or excessive if it is "designed to cause or known to create a substantial risk of causing death, serious bodily injury, disfigurement, extreme pain, extreme mental distress, or gross degradation." *Robertson*, 36 M.J. at 191.

In this case, there is sufficient evidence to find beyond a reasonable doubt that appellant committed the offense of assault consummated by a battery upon a child as alleged in Specification 1 of Charge IV. The testimony at trial showed that on 19 October 2018—the one-year anniversary of appellant's mother's death—appellant's brother-in-law had gotten into trouble at school. After yelling at the child for forty minutes, appellant whipped him across the buttocks more than twenty times with a belt embedded with metal shell casings. The victim testified about the extreme pain the assault caused. We are convinced beyond a reasonable doubt that appellant's conduct far exceeded the bounds of lawful parental discipline. The evidence presented supports the legal and factual sufficiency of appellant's guilty finding as to this specification.

## B. Double Jeopardy

Appellant raises a double jeopardy claim based on the military judge's multiple efforts to enter findings—which occurred on three separate occasions. The finding at issue concerns Specification 1 of Charge IV (assault consummated by a battery upon a child). In the first two findings, the military judge found appellant guilty by exceptions and substitutions, excepting the time window of 27 January 2018 through 31 December 2018 and substituting the specific date of 19 October 2018. Appellant contends that the third entry of findings added the date of 19 June 2018—a date as to which appellant had twice been acquitted —in violation of his double jeopardy protections.

7

The first time the military judge entered findings, he found appellant guilty of Specification 1 of Charge IV by exceptions and substitutions. The excepted words were "on divers occasions between on or about 27 January 2018 and 31 December 2018." The substituted words were "on or about 19 October 2018."

The next morning, on 23 February 2024, the military judge again entered findings. The military judge explained his rationale to appellant stating:

> [T]here were some inaccuracies in the findings of the court, so what I'm going to do now is I'm going to reenter them. They're not really – they're not changing anything, they're just clarifying. So there's not going to be anything that is significantly different. It's just going to be a little bit more clear, do you understand that?

Appellant responded, "Yes, Your Honor." In his second findings, the military judge found appellant guilty of Specification 1 of Charge IV by exceptions and substitutions. The excepted words were "on divers occasions between on or about 27 January 2018 and 38 (sic) December 2018."[7] The substituted words were "on or about 19 October 2018."

On 5 March 2024, the military judge closed the court for deliberations on sentence. When he reopened the court, he again discussed reentering findings with appellant. "As I mentioned on the record, we just talked, we're going to reenter findings. This doesn't change anything, except being a little bit more specific, to clarify exactly what you were found guilty of. So, we're going to do this again." In his third findings, the military judge found appellant guilty of Specification 1 of Charge IV by exceptions and substitutions. The excepted words were "on divers occasions between on or about 27 January 2018 and 31 December 2018." The substituted words were "on or about 19 October 2018." He also excepted the words "and with a paddle."

Appellant argues that the military judge, in the first two entered findings for Specification 1 of Charge IV, acquitted him of the window of time of "27 January 2018 and 31 December 2018," except for the specific date of 19 October 2018. Then, in the third findings entered, the military judge added the date of 19 June 2018, a date of which the military judge had previously acquitted appellant twice. Appellant claims this is an error of constitutional proportions and a violation of his double jeopardy protections.

However, these claims rely on an error in the written transcript of the trial that does not appear in the audio recording of the trial. When the military judge

---

[7] Presumably 31 December 2018.

entered findings for the third time, the court reporter transcribed a guilty finding for Specification 1 of Charge IV by exceptions and substitutions as follows: "on or about 19 June 2018 and October 2018." The audio record however reflects the actual words of the military judge: "on or about 19 June October 2018." The military judge clearly misspoke by saying "June," he can be heard on the court audio catching his error. After the word "June," he did not utter the words "*2018 and October 2018.*" As a result, the findings for this specification are consistent with the 19 October 2018 date across all three findings entered. Additionally, the finding is consistent with the Statement of Trial Results Findings Worksheet. The official record of trial is the "verbatim recording of the court-martial proceedings,"—not the transcript. We find the military judge corrected himself after saying the word "June" and that the correct date is "19 October 2018." *See* R.C.M. 1112(b)(1). Rule for Courts-Martial 922(d) allows a military judge to announce new findings of the court-martial to correct errors made. The new findings can be announced "before the final adjournment of the court-martial." As a result, we find no error to correct.

### C. Illegal Sentence

Appellant further raises error due to the military judge sentencing appellant contrary to his election of unitary sentencing rights. Before appellant was arraigned, the military judge conducted the following colloquy:

> MJ: Because you are charged with offenses allegedly occurring before 1 January 2019 and on or after 1 January 2019, the applicable sentencing rules for this court-martial are the sentencing rules in effect prior to 1 January 2019. If you are convicted of any offense, no matter when the offense was committed, this court-martial will apply the sentencing rules in effect prior to 1 January 2019.
>
> However, you may elect to be sentenced under the sentencing rules in effect as of 1 January 2019. If you make this election and are later convicted of any offense, no matter when the offense occurred, you will be sentenced under the sentencing rules in effect on 1 January 2019. You must make this election prior to your arraignment. Your election regarding the applicable sentencing rules is irrevocable unless I find good cause for a later request to withdraw the election.
>
> Have you discussed this with your defense counsel?
>
> ACC: Yes, Your Honor.

9

The military judge then allowed defense counsel to take a short recess to discuss these options further with appellant. After the recess, the colloquy continued:

> MJ: Okay, I'm going to – I'm going to go back over the sentencing. Just – your election regarding the applicable sentencing rules is irrevocable unless I find good cause for a later request to withdraw the election.
>
> Did you need me to repeat your sentencing rights or – or do you understand those?
>
> ACC: I understand, ma'am.
>
> MJ: Okay. Have you discussed all this with the defense counsel?
>
> DC: Your Honor, we had just discussed it. The defense would request to defer the election of sentencing rights just so we could confer with [Civilian Defense Counsel] about the sentencing rights.
>
> MJ: It has to be made – prior to arraignment, counsel.
>
> DC: Okay, in that case, Your Honor, we will elect the sentencing under the old rights.
>
> MJ: Under the old system?
>
> DC: Yes, under the old system.
>
> . . .
>
> MJ: [Speaking to appellant] And if you are convicted of any offense, under which sentencing rules do you wish to be sentenced?
>
> ACC: The prior election rights, Your Honor.
>
> MJ: So, the old sentencing – the rules that were in effect prior to 1 January 2019?
>
> ACC: Yes, Your Honor.

Appellant was then arraigned. After arraignment, the presiding military judge changed.[8] The new military judge later sentenced appellant using segmented sentencing under the post-1 January 2019 rules, as described in footnote two above.

On appeal, appellant argues that the sentence is illegal because the military judge did not use the pre-2019 sentencing rules as appellant elected. Appellant was sentenced using segmented sentencing instead of unitary sentencing.

We ordered the parties to provide briefing on the following specified issues:

(1) Whether appellant waived his right to a unitary sentence when defense counsel failed to notify the military judge of appellant's previous election and failed to object to the sentence as adjudged by the military judge?

(2) If not waived, whether the military judge's announcement of a segmented sentence, after the appellant elected unitary sentence, constituted structural error?

(3) If the error was neither waived nor structural, whether appellant was prejudiced by the military judge adjudging a segmented sentence?

Appellant argues in his supplemental brief that he did not waive his right to a unitary sentence since the question is one of jurisdiction—due to the requirement that a court-martial be authorized by law to impose the sentence. Appellant contends that because jurisdictional defects are never waived, appellant could not have waived his unitary sentencing right. Appellant further contends that even if the issue was not jurisdictional, he was not required to renew his sentencing election to preserve the issue for appellate review because he timely asserted his right to a unitary sentence at arraignment. Appellant concedes this is not structural error since the error was in sentencing, not findings. Finally, appellant argues that the military judge's use of segmented sentencing constitutes an impermissible ex post facto change in punishment, given the military judge's decision to use consecutive sentencing for portions of appellant's sentence—which increased his punitive exposure.

The government's position has materially shifted from its original concession. The government initially conceded that we should remand for appellant to be resentenced since the sentence was "not unitary, as required by the 2016 version of R.C.M. 1002, appellant's sentence was not 'correct in law,' as required by Article

---

[8] In addition, due to the changing of trial counsel and absence of appellant's civilian defense counsel at arraignment, the only parties present for sentencing that were previously present for the arraignment were the military defense counsel and appellant.

66, UCMJ." However, on supplemental brief, the government argues that the lack of a unitary sentence was waived by appellant's trial defense counsel who "intentionally relinquished the known right" to such unitary sentence. *See United States v. Malone*, __ M.J. __, 2026 CAAF LEXIS 62 at *8–9 (C.A.A.F. 20 Jan 2026) and *United States v. Gladue*, 67 M.J. 311, 313–14 (C.A.A.F. 2009).

Waiver is the intentional relinquishment of a known right. *Malone*, __ M.J. at __, 2026 CAAF LEXIS 62 at *9. Here, we find the lack of a unitary sentence waived. Although appellant timely requested a unitary sentence at arraignment, when the military judge imposed a segmented sentence, neither appellant nor his counsel raised any objection. In fact, the military judge asked, immediately following pronouncement of sentence, whether the parties had "[a]ny other matters to take up before the court adjourns," and the military defense counsel responded, "No, Your Honor." This response, following an explicit invitation from the military judge, constitutes the intentional relinquishment of a known right.

Even if the issue was not waived, appellant cannot demonstrate prejudice. The maximum punitive exposure in this case was thirty-nine years of confinement, and the military judge sentenced appellant to thirty-six months of confinement, albeit with segmented sentencing and two groupings of sentences to run consecutive to each other. Appellant has not demonstrated a reasonable probability that, absent the segmented sentence format, the military judge would have imposed a lesser total period of confinement. We do not agree with appellant that this is an "impermissible ex post facto change in punishment." An ex post facto change in punishment would occur under circumstances where appellant faced a retroactive increase in punitive exposure. That is not what happened here. The sentence faced by appellant remained the same, it was merely the format in which the military judge issued the punishment that changed. *See United States v. Gorski*, 47 M.J. 370, 373 (C.A.A.F. 1997) (explaining that ex post facto laws are "concerned with punishment," and that there are four categories of laws that would violate the Constitution, if passed after appellant commits the offense: (1) new criminal offenses; (2) laws that aggravates the level of the crime; (3) laws that inflict a greater punishment; and (4) laws that alter the amount of evidence required to convict) (citation omitted).

Finally, we agree with both appellant and the government that the military judge's announcement of a segmented sentence, after appellant elected unitary sentence, did not constitute structural error.

*D. Was Article 60 Complied With?*

Appellant's fourth assignment of error asks us to remand the case for new convening authority action under Article 60, UCMJ.[9] Specifically, appellant contends that the convening authority failed to comply with the version of Article 60 in effect in 2018, which required the convening authority to take "action on the sentence." UCMJ art. 60(c)(2) (2012).

As a threshold matter, the convening authority was properly advised by his Staff Judge Advocate on the correct version of Article 60, UCMJ. Regardless of this advice, he nonetheless approved "none" in the block labeled "Convening authority's action on the findings and/or the sentence."

In *United States v. Brubaker-Escobar*, our superior court held that it is error for a convening authority to take no action on the sentence in a case where a specification involved an offense that was committed before 1 January 2019. 81 M.J. 471 (C.A.A.F. 2021) (distinguishing Article 60, UCMJ, 10 U.S.C. § 860 (2012) from the newer Article 60, UCMJ, 10 U.S.C. § 860 (2018)). However, the Court of Appeals for the Armed Forces [CAAF] also held that this error does not deprive the court of criminal appeals [CCA] of jurisdiction under Article 66, UCMJ (2018), which provides that when a military judge enters judgment and the sentence includes a punitive discharge or confinement for two years or more, the CCA has jurisdiction. *See* Article 66(b)(3), UCMJ. Finally, the CAAF found harmless error, applying a fact-specific analysis of the convening authority's available clemency options.

We find this case indistinguishable from *Brubaker-Escobar*. Though the convening authority erred by not taking specific action on the sentence as required by Article 60(c)(2)(A), UCMJ (2012), we retain jurisdiction under Article 66(b)(3), UCMJ (2018), because the military judge entered judgment with a sentence that included both a punitive discharge and confinement for two years or more. As in *Brubaker-Escobar*, we find the convening authority's error to be harmless. Article 60(c)(4)(A), UCMJ (2012) expressly limits the convening authority's clemency authority, prohibiting any reduction of the punitive discharge or confinement. By operation of law, appellant's adjudged sentence also results in automatic reduction to E-1 and automatic forfeiture of all pay and allowances. *See* UCMJ arts. 58a, 58b, and Army Reg. 27-10, Legal Services: Military Justice, para. 5-38 (20 April 2024). Accordingly, the convening authority retained no meaningful clemency authority over any element of appellant's sentence. This leaves no further ability for the convening authority to provide appellant with meaningful relief on the sentence

---

[9] While styled as an assignment of error, appellant's brief also specifies in a footnote that this matter was raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

adjudged. As a result, the convening authority's failure to take action on the sentence is harmless.

## CONCLUSION

On consideration of the entire record, the findings of guilty and the sentence are AFFIRMED.[10] [11] [12] [13]

Senior Judge POND and Judge STEELE, concur.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court

---

[10] We order the Entry of Judgment corrected to properly reflect the rank of appellant as "CPL" (Corporal). The current version specifies his rank as "SPC" (Specialist).

[11] We exercise our discretion to correct the Statement of Trial Results to reflect that appellant received a dishonorable discharge. See *United States v. Williams*, 85 M.J. 121, 126 (C.A.A.F. 20024) (holding that Courts of Criminal Appeals "may act only with respect to the findings and sentence as entered into the record."). The original states "None" under punitive discharge (block 11).

[12] Specification 2 of Charge IV faced an unopposed R.C.M. 917 motion for a finding of not guilty. The Statement of Trial Results reflects a finding of "dismissed." We order the Statement of Trial Results Findings Worksheet corrected to reflect "Not Guilty" for this specification.

[13] Appellant pled guilty by exceptions and substitutions to Specification 3 of Charge IV. He pled guilty, except the words "divers occasions," substituting therefor "one occasion." He also pled guilty except the words "and a paddle." The Statement of Trial Results Findings Worksheet reflects a guilty plea without exceptions and substitutions. We order the Statement of Trial Results Findings Worksheet corrected to accurately reflect appellant's guilty plea and finding to Specification 3 of Charge IV.

14